UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MOUHAMED THIAM,

                                    **COMPLAINT**

                                    **13 cv 6609 (JSR)**
                                    **ECF Case**

           Plaintiff,

    vs.

The CITY OF NEW YORK, POLICE OFFICER
MATTHEW SCHILLER, Shield # 1619, And
SERGEANT ROBERT ANTONELLI, Shield # 918701,
in their individual and official capacities,

                                    **JURY TRIAL**
                                    **DEMANDED**

                     Defendants.
------------------------------------------------------------------------x

Plaintiff Mouhamed Thiam, by his attorney, Cyrus Joubin, complaining of the

Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action arises from the unconstitutional arrest and beating of Mouhamed Thiam ("Plaintiff") after he lawfully exercised his First Amendment right to freedom of speech. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for unreasonable search and seizure, false arrest and imprisonment, failure to intervene, First Amendment retaliation, excessive force, and a *Monell* claim against the City of New York for the same constitutional violations. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district and Plaintiff resides in this district.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. Plaintiff Mouhamed Thiam is an African-American male, and at all relevant times a resident of the City of New York, State of New York.

6. The individually named defendants Police Officer Matthew Schiller (Shield # 1619) ("PO Schiller") and Sergeant Robert Antonelli (Shield # 918701) ("Sgt. Antonelli") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. Upon information and belief, on the date of the incident giving rise to this complaint, the individual defendants were assigned to the 13th Precinct in Manhattan.

8. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law,

in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

10. On about four occasions in the Spring of 2013, NYPD officers from the 13th Precinct verbally taunted and harassed Plaintiff while he was simply standing on the sidewalk outside his uncle's store, at 28th Street and Broadway. These officers, while cruising in their marked police vehicles, would loudly exclaim inappropriate comments at Plaintiff, mocking the way he dressed, poking fun at his pink shoes for instance. Singling out Plaintiff without cause or provocation, intending to degrade and demean him, these officers caused Plaintiff to feel embarrassed, confused, and humiliated.

11. In an effort to stop the officers' conduct, Plaintiff went to the 13th Precinct (230 East 21st Street in Manhattan) on May 11, 2013 to make a complaint.

12. Although Plaintiff explained the harassing and inappropriate behavior of the police to the desk officer at the 13th Precinct, that officer offered no help or guidance. So Plaintiff asked to speak to a supervisor who could address his concerns.

13. Sgt. Antonelli went to the Precinct lobby and met Plaintiff. Although Plaintiff lucidly expressed and clearly explained his legitimate grievance to Sgt. Antonelli, Sgt. Antonelli brushed aside Plaintiff's grievance and summarily told Plaintiff to leave the Precinct.

14. At no point in the 13th Precinct on May 11, 2013 did Plaintiff ever act aggressively or pose any danger. He was composed and calm, even as he was upset, criticized the police, and wanted an end to the needless mockery.

15. After Sgt. Antonelli told Plaintiff to leave, PO Schiller, who was present in the lobby, grabbed Plaintiff, dragged him to the door, and pushed him outside the Precinct, telling him not to re-enter or else he'd be arrested.

16. Afterwards, Plaintiff repeated his complaint and his request to make a formal complaint. Thinking that he had the right to complain and that the NYPD had a duty to address his genuine complaint in good faith, Plaintiff walked back into the 13th Precinct.

17. Upon re-entering the Precinct, Plaintiff was arrested by PO Schiller, who handcuffed him and escorted him into a holding cell, cutting off Plaintiff's ability to express his grievance.

18. At no point during the arrest or in the holding cell did Plaintiff resist or use any physical force.

19. Once he was placed in the holding cell, with the door locked, Plaintiff cursed at PO Schiller, saying "Why did you lock me up? Fuck you and the 13th Precinct," for he was upset that after expressing a legitimate complaint, he was not assisted but arrested.

20. Plaintiff's words motivated PO Schilller, who was standing outside the holding cell, to unlock the door of the holding cell, go inside, and viciously punch the defenseless Plaintiff in his face.

21. One of PO Schiller's blows smashed Plaintiff's right eye, causing instant swelling of Plaintiff's face, leading to terrible pain, and blurring his vision.

22. This blow rendered Plaintiff silent, except for his cries and gasps of pain.

23. This blow was so palpably serious that a NYPD officer at the scene called for an ambulance, which took Plaintiff to Bellevue Hospital.

24. After an examination and treatment at Belleview, Plaintiff was transported first to the 13th Precinct to be fingerprinted, then to New York County Criminal Court, where he was arraigned on charges of Resisting Arrest (NY Penal Law § 205.30) and Trespass (P.L. § 140.05).

25. The case against him was: <u>People of the State of New York v. Thiam Mouhamed</u>, Docket Number 2013NY037581.

26. After being arraigned, Plaintiff was released on his own recognizance, ending over twenty-four hours of unlawful confinement.

27. The prosecution against Plaintiff was concluded in August 2013 when he accepted an Adjournment in Contemplation of Dismissal ("ACD") pursuant to New York Criminal Procedural Law § 170.55.

28. As a result of his unlawful arrest and imprisonment, Plaintiff suffered emotional distress, anguish, humiliation, and degradation.

29. As a result of PO Schiller's blow to his eye, Plaintiff suffered great physical pain, scarring, and impaired vision.

30. Because Plaintiff's arrest and beating took place in response to Plaintiff's lawful exercise of his right to free speech, Plaintiff suffered unconstitutional retaliation for exercising his First Amendment right, with his exercise of that right chilled as a consequence.

31. The NYPD failed to supervise and discipline the individual defendants despite their histories of misconduct and abuse of power. Despite serious complaints made

against the individual defendants, the NYPD failed to properly investigate, adjudicate, and impose discipline, ignoring the risk that they would engage in future misconduct.

33. The NYPD's flaccid response to rogue officers constitutes an irrational custom and policy that fosters a culture of misconduct and mendacity in the NYPD.

33. Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve. But NYPD officers often face only minor discipline or no discipline whatsoever for serious wrongdoing.

34. The inadequacy of NYPD's supervision and discipline is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not being wrongfully arrested and charged.

35. On October 17, 2011, NYPD Commissioner Raymond Kelly directed the release of Operations Order No. 52, which mandates that "Department managers <u>can</u> and <u>must</u> set performance goals" related to issuing summons, questioning suspicious individuals, and arresting criminals.

36. Because arrests are rewarded, while making false arrests and fabricating charges go largely unpunished, police officers have felt incentivized to engage in false arrests and to fabricate criminal charges; such perverse incentives become particularly destructive in the hands of undisciplined, unsupervised officers.

37. Moreover, there is a gross deficiency in training the NYPD on the First Amendment – specifically, the right of citizens to express themselves lawfully. NYPD officers are consequently unable to distinguish between protected speech and unprotected

6

speech, between merely inconvenient forms of speech and illegal forms of speech, between lawful insults and unlawful threats.

38. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

    a. Violation of his constitutional rights under the First and Fourth Amendments to the United States Constitution;

    b. Severe emotional trauma, distress, degradation, and suffering;

    c. Physical injury;

    d. Loss of income and income potential.

## SECTION 1983 CLAIMS

### FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

39. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

40. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

41. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the First and Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

42. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

43. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### False Arrest Under Section 1983

44. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

45. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

46. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

47. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Failure to Intervene Under Section 1983

48. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

49. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

50. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

51. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

### FOURTH CLAIM

#### Excessive Force Under Section 1983

52. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

53. By the actions described, the individual defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from excessive and unreasonable force.

54. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

### FIFTH CLAIM

#### First Amendment Retaliation Under Section 1983

55. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

56. By the actions described, the individual defendants retaliated against Plaintiff because he lawfully exercised his First Amendment right to free speech – arresting him for complaining about the 13th Precinct, beating him for cursing the police. In doing so, the individual defendants chilled Plaintiff's exercise of his right to free speech.

57. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

### SIXTH CLAIM

#### Municipal Liability Under Section 1983

58. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

59. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment rights through its official policy and custom of having weak disciplinary measures for NYPD officers who have histories and propensities of abuse of power; a policy and custom of systematically ignoring credible doubts about police officers' integrity and morality; a policy and custom of failing to adequately investigate and punish misconduct, which encourages unscrupulous officers to deprive citizens of rights.

60. By failing to seriously investigate and truly assess the individual defendants' past abuses of power, and by failing to appropriately supervise and discipline them, the NYPD tacitly endorsed their reprehensible and disordered behavior, empowering them to continue such behavior.

61. By continuing to allow the individual defendants – and other potentially malicious, dishonest, rogue officers – the power to, among other things, carry a gun, make arrests, and initiate criminal charges against New Yorkers, the Defendant City has exhibited deliberate indifference to the safety, well-being, and rights of New Yorkers.

62. By tolerating weak and ineffectual means of supervising, regulating, sanctioning, disciplining, and monitoring malicious and mendacious officers, Defendant City has intentionally disregarded the constitutional rights of New Yorkers.

63. By failing to train its officers on the First Amendment, Defendant City has intentionally disregarded the First Amendment rights of New Yorkers.

64. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a.    An order awarding compensatory damages for Plaintiff Mouhamed Thiam in an amount to be determined at trial;

    b.    An order awarding punitive damages in an amount to be determined at trial;

    c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

    d.    Such other and further relief as this Court may deem appropriate.

DATED:    September 18, 2013    _____s/_____
                New York, New York    CYRUS JOUBIN, ESQ.
                                                317 Lenox Avenue, 10th Fl.
                                                New York, NY 10027
                                                (703) 851-2467
                                                joubinlaw@gmail.com
                                                Attorney for Mouhamed Thiam